**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:20-cr-00090-MR-WCM**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **ORDER** |
| | **)** | |
| | **)** | |
| **SIVA K. DURBESULA,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| _____ | **)** | |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss for Speedy Trial Act Violation. [Doc. 14].

## I.   BACKGROUND

On January 28, 2020, the Defendant was indicted by a federal grand jury in the Florence Division of the District of South Carolina for violation of 18 U.S.C. § 2244(b) and 28 U.S.C. § 2461(c). [Doc. 1-1, DSC Doc. 4].[1]  He made his initial appearance in that District on March 3, 2020. [Id. at DSC Doc. 15].  On March 16, 2020, District of South Carolina Chief Judge Harwell issued a Standing Order continuing all criminal cases in the District of South

_____

[1] Citations to Doc. 1-1 encompass the entire record from the case appearing in the Untied States District Court for the District of South Carolina, No. 4:20-cr-0065. Specific citations are made to the docket number in that case.

Carolina through May 8, 2020, due to the COVID-19 pandemic and referencing the Center of Disease Control and Prevention's guidelines, the President's declaration of a national public health emergency, and the South Carolina Governor's declaration of a public health emergency in the state. In Re: Court Operations in Response to Covid-19, Standing Order, 3:20-mc-105 (D.S.C. Mar. 16, 2020). In that Standing Order, Chief Judge Harwell declared that:

> Due to the Court's reduced ability to obtain an adequate spectrum of jurors and the above-reference public health considerations associated with criminal jury trials and grand jury proceedings, the time period of the continuances implemented by this Standing Order will be excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). The Court finds that the ends of justice served by ordering these continuances outweighs the best interest of the public and each defendant's right to speedy indictment or trial. The Court may extend the period of exclusion as circumstances may warrant.

Id.

On March 26, 2020, Chief Judge Harwell continued this specific case until June 4, 2020, referencing the Standing Order. [Doc. 1-1, DSC Doc. 30]. Chief Judge Harwell found that the delay is "exuded in computing the time within which trial must begin pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A)" and that "the ends of justice served by ordering a continuance outweighs the best interest of the public and the defendant's right to speedy trial in light of the global pandemic and high risk of transmission." [Id.] Chief

2

Judge Harwell further continued the case and excluded the time in computing for the Speedy Trial Act, to July 23, 2020, then to September 10, 2020, referencing the reasoning in the Standing Orders and finding that the "ends of justice served by ordering a continuance outweighs the best interest of the public and the defendant's right to speedy trial in light of the reduced ability to obtain an adequate spectrum of jurors, the global pandemic and high risk of transmission, and public health considerations." [Id. at DSC Doc. 31, 45].

On August 19, 2020, the Defendant filed a motion to dismiss or in the alternative to transfer the case to the Western District of North Carolina. [Id. at DSC Doc. 55]. On August 26, 2020, the court transferred the case to this Court in the Western District of North Carolina pursuant to Federal Rule of Criminal Procedure Rule 21. [Id. at DSC Doc. 66, 67]. On September 21, 2020, the Defendant made his first appearance in this Court. A grand jury in the Western District of North Carolina returned a Second Superseding Bill of Indictment on October 6, 2020. [Doc. 5]. The Defendant was arraigned on October 9, 2020, with motions to continue or plea agreements set to be due on October 16, 2020. The trial was set for the next available term in this Court.

On October 30, 2020, the Defendant filed a motion *in limine* to exclude certain evidence of a prior sexual assault. [Doc. 10]. On November 4, 2020,

3

the Defendant filed the motion to dismiss for violation of the speedy trial act.
[Doc. 14]. The trial is set to start on November 9, 2020.

## II. LEGAL STANDARD

The Speedy Trial Act requires that, a defendant's trial "shall commence within seventy days from the filing date (and making pubic) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). In calculating that time period, however, there are certain "periods of delay" that are excluded including delays from pretrial motions until the disposition of that motion, a "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the federal rules of criminal procedure," and delays from transportation of the defendant from district to district. Id. § 3161(h)(1).

## III. DISCUSSION

The language of the Speedy Trial Act specifically references the period after the date in which the defendant "has appeared before a judicial officer of the *court in which such charge is pending.*" 18 U.S.C. § 3161(c)(1) (emphasis added). The Case has been pending in *this* Court since the Defendant made his initial appearance here on September 21, 2020.

4

Though the case against the Defendant was previously pending in the District of South Carolina, that court is not this Court. The fact that the charges against the Defendant were pending there for some time is irrelevant to this question, as shown by the plain language of 18 U.S.C. § 3161(c)(1). United States v. Garcia, 995 F.2d 556, 559 (5th Cir. 1993) ("[T]he first appearance before a judicial officer of the court in which the indictment has been filed is the triggering event."); see United States v. Black, No. 17-10123-EFM, 2019 WL 6052472, at *3–4 (D. Kan. Nov. 15, 2019)  (finding that the plain reading of the language "the court in which such charge is pending" means the district the charge is currently pending in the context of a guilty plea withdrawn in another district).

The Defendant argues that the arraignment in the District of South Carolina was the "triggering event" for the Speedy Trial Act, citing to United States v. Lattany, 982 F.2d 866 (3rd Cir. 1993). [Doc. 15 at 2]. The Government in turn cites to United States v. Lattany, for the proposition that delays attributable to the Defendant are excluded from the Speedy Trial clock, which is relevant because the delay in this proceeding was caused in part by the Defendant's filing of the motion seeking transfer. [Doc. 16 at 5]. United States v. Lattany is inapplicable to the unique circumstances of the transference in this case. In United States v. Lattany, there were numerous

open-ended continuances of a case that was indicted and tried in a single district. <u>Lattany</u>, 982 F.2d at 870–71. The Third Circuit found that because the numerous delays in that case were often at the request of the defendant or with the consent of the defendant, the nature of these delays and continuances made a six-month delay "not unreasonable as a matter of law." <u>Id.</u> at 883. The footnote in the case to which the Defendant cites merely states that the speedy trial period does not restart "when subsequent charges are filed in a supplemental indictment that charge the same offences as the original indictment" but does restart if "the subsequent filing charges a new offence that did not have to be joined with the original charges." <u>Id.</u> at 873 n.7. This does not address the question of whether the Speedy Trial Clock restarts when the case is transferred to a different district, as there was no such transfer in that case.

The Government cites to <u>United States v. Dunque</u>, 62 F.3d 1146, 1149–50 (9th Cir. 1995), to support their argument that when a case is transferred and re-indicted in a new district at the request of defendant the clock restarts for the purposes of the Speedy Trial Act. The Defendant argues that this is a misreading of the statute, citing to <u>United States v. Eugene</u>, No 91-cr-00512-CSH, 1993 WL 77289 (S.D.N.Y. Mar. 12, 1993). In <u>United States v. Dunque</u>, the defendant was originally indicted in

California, but the case was transferred under Federal Rule of Criminal Procedure Rule 21 to the District of Arizona where the defendant was re-indicted. Dunque, 62 F.3d at 1148–49. Because the California indictment was not dismissed until several months later, the defendant argued that the Arizona indictment should be viewed as a "superseding indictment which retains the original Speedy Trial Act clock." Id. at 1149. The Ninth Circuit Court of Appeals did not conclusively answer the question, holding that as the defendant's rights were not violated either way, the court would not decide whether the reindictment restarts or merely tolls the Speed Trial clock. Id. at 1150.

In United States v. Eugene, to which the Defendant cites, the transfer of the case was under Rule 20, rather than Rule 21, for the purpose of a guilty plea. United States v. Eugene, 1993 WL 77289, at *2–4. In that case the defendant never pled guilty and there was an error in the transfer back to the original district. Id. The court in that case found a violation of the Speedy Trial Act in the *original* district but did not discuss the effect on the *transferee* district. Id. Thus, once again, the case cited has no application to the present circumstances. See, e.g., United States v. Young, 814 F.2d 392, 395 (7th Cir. 1987) (finding the Speedy Trial clock did not begin to run when

defendant appeared in the district to which the case had been transferred under Rule 20, because it was not the court in which charge was pending).

In the absence of any decisions interpreting § 3161(c)(1) any differently, a plain reading if the statute leads the Court to the conclusion that the transfer restarts the Speedy Trial clock for the transferee district as "the court in which such charge is pending." Therefore, the Speedy Trial Clock did not begin to run with regard to the pending trial until the date the Defendant first appeared on September 21, 2020.

The present facts bear out this interpretation of the statute and clearly illustrate how the Defendant's arguments are detached from the reality of the operation of the Court. The Defendant came to this district at his instance. Once he arrived here and made his first appearance, his case was calendared for trial in the *very next jury term* for which a jury had been summoned. The terms of this Court are scheduled based on the timing dictated by the Speedy Trial Act. The Defendant's case has *never* been continued in this District for any reason. Nevertheless, the Defendant seems to insist that the Court was somehow obligated to conjure up a jury pool within an unrealistic period of time to try his case separately. The jury selection for his trial is scheduled for November 9, 2020, a mere 48 calendar days after his initial appearance and well within the seventy days

contemplated by the statute. It should be noted that all of this was accomplished notwithstanding the fact that this case was transferred to this Court without any notice; the Defendant's attorney (a South Carolina Federal Defender) could not continue representation in this District, so the Defendant needed a new attorney; and the United States Attorney's Office in this District had to undertake this prosecution. The Defendant asks that we ignore these realities.

Even if the Court were to accept the Defendant's argument that any delays that occurred in this District of South Carolina are to be considered part of the Speedy Trial Act calculation regarding his prosecution in this District, less than seventy non-excluded days will have passed before the commencement of the Defendant's trial. The clock ran from March 3, 2020, the day of the Defendant's first appearance in South Carolina, to March 16, 2020, the date in which the Standing Order was issued (for a total of 13 days). On March 16, 2020, the clock stopped because of the Standing Order by Chief Judge Harwell which continued all criminal cases. In Re: Court Operations in Response to Covid-19, Standing Order, 3:20-mc-105 (D. S.C. Mar. 16, 2020). The Defendant argues that the Standing Order is insufficient under the Speedy Trial Act to toll the Speedy Trial clock in this case. [Doc. 17 at 2]. In support of this position, the Defendant points to a case in which

the Supreme Court invalidated a blanket waiver of the Speedy Trial Act that did not include fact-specific findings, <u>Zedner v. United States</u>, 547 U.S. 489, 492 (2006), and a Fourth Circuit case which stated "ends of justice" continuances must include specific findings in order for the time to be excluded from the Speedy Trial clock. <u>United States v. Henry</u>, 538 F.3d 400 (4th Cir. 2008). However, recent cases have recognized that blanket tolling of the Speedy Trial Clock through standing orders does not violate the specificity requirement in light of the COVID-19 pandemic. <u>See</u> <u>United States v. Lev</u>, No. 173195, 2020 WL 2615477, at * 3 (D. N.J. May 22, 2020) (holding that the specificity requirement was met in a standing order in which the Court "made specific findings regarding the COVID-19 pandemic that apply equally to this case and all other criminal cases in the District" and this was "within the inherent powers of the Court to engage in emergency management"); <u>see also</u> <u>United States v. Maamah</u>, No. TMD-20-00612, 2020 U.S. Dist. Lexis 90426, at *14 (referencing a standing order in the exclusion of time under the Speedy Trial Act); <u>United States v. Diaz-Nivar</u>, No. 20-cr-00038-JD, 2020 WL 3848200, at *3 (D.N.H. July 8, 2020) (holding that a standing order made in light of COVID-19 was applicable to the defendant's case). The Defendant's argument once again fails to acknowledge the realities of the COVID-19 pandemic, particularly as it

impacted the operation of the South Carolina court. Judge Harwell made specific findings as to how the pandemic thwarted the ability of the Court to provide proper and adequate jurors – jurors just like the ones the Defendant desires to have decide his case. Those findings, and the considerations that give rise to them, were equally applicable to the Defendant's case as to every other jury case pending in that district at that time. Therefore, those findings, as incorporated into the continuance orders in the Defendant's case, are sufficient. It is for this reason that blanket orders tolling the STA clock due to an emergency have been upheld in the past. Furlow v. United States, 644 F.2d 764 (9th Cir. 1981) (blanket continuance following Mt. St. Helens eruption); Untied States v. Correa, 182 F. Supp. 2d 326 (S.D.N.Y. 2001) (blanket continuance following the 9/11 terrorist attacks). For these reasons the Court must conclude that the Defendant's position that the Standing Order did not stop the clock on the Speedy Trial Act must fail.

From August 19, 2020, to August 26, 2020,[2] the clock did not run because the Defendant's motion for transfer was pending. 18 U.S.C. § 3161 (h)(1)(D) (stopping the clock for any delay from "any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure"). From August 26, 2020, to

---

[2] Judge Harwell's Order had tolled the clock through September 10. [DSC Doc. 45].

11

September 21, 2020, the clock did not run as the Defendant's transfer to this District was being effectuated. Under 18 U.S.C. § 3161(h)(1)(F), a "delay resulting from transportation of any defendant from another district" is excludable except that any time over ten days "shall be presumed to be unreasonable." That presumption, however, is overcome here. The 26 days to transfer the Defendant was reasonable given COVID-19 conditions. The ten day presumption is based on ordinary circumstances for those transporting a Defendant. The pandemic, however, greatly affected the manner of transportation, the need for the local detention facilities to account for quarantines, and for the Court to address the Defendant in light of such quarantines. The 26 days of transportation overcomes the presumptive limitation of ten days and these 26 days are also excluded from the Speedy Trial Clock.

The clock restarted on September 21, 2020 when the Defendant first appeared in this District. The clock then stopped again when the Defendant filed his motion *in limine* on October 30, 2020 (39 days). 18 U.S.C. § 3161(h)(1)(D) (excluding delays based on pretrial motions "from the filing of the motion through the conclusion of the hearing on" the motion). In total, counting the time in which the Defendant's indictment was pending in the District of South Carolina, there were only 52 non-excludable days.

**ORDER**

      **IT IS, THEREFORE, ORDERED**, the Defendant's Motion Dismiss for Speedy Trial Act Violation [Doc. 14] is **DENIED**.

      **IT IS SO ORDERED**.

Signed: November 8, 2020

Martin Reidinger
Chief United States District Judge